UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-187-GWU

DANNY RAY SIMPSON,                                                                PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

1

09-187  Danny Ray Simpson

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

09-187 Danny Ray Simpson

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

3

09-187  Danny Ray Simpson

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Danny Ray Simpson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease (status post stenting times 2), hypertension, and hyperlipidemia. (Tr. 1068). Nevertheless, based in part on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 1074-8). The Appeals Council declined to review, and this action followed.

At the most recent hearing, on September 4, 2008, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, with a sit/stand option,

and also had the following non-exertional limitations. He: (1) could no more than "frequently" handle and finger objects; (2) could occasionally crouch and kneel; (3) needed to avoid climbing ladders, ropes, and scaffolds and exposure to temperature extremes, excessive humidity, and pulmonary irritants. (Tr. 1452-4). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 1454).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

By way of procedural background, Mr. Simpson filed prior applications for DIB and SSI which were denied in a February 20, 2004 ALJ decision; this decision was affirmed by the undersigned and is administratively final. Simpson v. Barnhart, Civil Action No. 6:04-31 (E.D. Ky. May 25, 2005). The current set of applications were filed on June 17, 2004, and following another negative ALJ decision and a remand by the Honorable Karen K. Caldwell, Simpson v. Astrue, Civil Action No. 6:07-235-KKC (E. D. Ky. January 18, 2008), it was consolidated with additional applications made in 2007. (Tr. 513-21, 1066-78, 1381-98).

The plaintiff asserts that he is unable to work due to chest pain and weakness following the placement of a stent in his right coronary artery in 1999, high blood pressure, which gives him blurred vision and dizziness, neck, shoulder,

09-187  Danny Ray Simpson

and back pain and pain from carpal tunnel syndrome in the right hand.  (Tr. 1047, 1049, 1056-7, 1413, 1421, 1433).  He was also recently diagnosed with diabetes after filing his applications.  (Tr. 1424).

Judge Caldwell remanded the case because the ALJ improperly rejected opinions from Mr. Simpson's treating physicians, family practitioner José Echeverria and cardiologist Mubashir Qazi. (Tr. 1096-1101).  Dr. Echeverria had opined in October, 2005 that Mr. Simpson would be limited to lifting no more than 10 pounds, standing and walking 15 to 30 minutes and sitting 30 to 60 minutes in an eight-hour day.  Although the sitting and standing restrictions alone would preclude full-time work, Dr. Echeverria additionally provided restrictions on pushing and pulling and working around moving machinery, temperature extremes, and humidity.  (Tr. 909-11).[1]

Dr. Qazi completed a Cardiac Residual Functional Capacity Questionnaire in October 2005, and reported the plaintiff's diagnoses as coronary artery disease with a stent to the right coronary artery, hypertension, and high cholesterol.  (Tr. 903).  His symptoms were chest pain, anginal equivalent pain and, at times, palpitations, although he had "no complaints at last [appointment] 8-12-05."  (Id.).  Dr. Qazi restricted Mr. Simpson to lifting 10 pounds occasionally, to sitting and

---

[1] He indicated that his patient did not participate in any postural activities due to chest pain, but seems to indicate that all such activities could be engaged in frequently or occasionally.  (Tr. 910).

standing/walking less than two hours each, and imposed other limitations including a need to keep his legs elevated during prolonged sitting, avoiding all exposure to extreme cold, heat, high humidity, and wetness, and avoiding even moderate exposure to fumes, odors, dust, gases, and hazards. Carpal tunnel syndrome in his right wrist was also mentioned. Dr. Qazi felt that physical symptoms were causing depression and anxiety, which in turn were often interfering with attention and concentration. He opined that Mr. Simpson would miss work more than three times a month. (Tr. 903-7).

Following the court remand in 2008, the ALJ obtained additional treatment notes from both Drs. Echeverria and Qazi, a consultative examination by Dr. Barry Burchett, and, to deal with the court's finding that the 2006 ALJ decision did not contain substantial evidence to overcome the opinions of the treating physicians, he also heard testimony from Dr. Edwin Bryan, a board certified specialist in internal medicine and cardiology. (Tr. 1448).

Dr. Bryan summarized the medical evidence in detail. He testified that Mr. Simpson's first impairment was cardiovascular disease, and that a stent had been placed in the right coronary artery (RCA) in November, 1999. At that time, the plaintiff was allowed to go back to work. A catheterization in November, 2001 showed widely patent coronary arteries (Tr. 1438), and it was concluded that the chest pain he was experiencing was non-cardiac. Further studies including a stress

Cardiolite study in November, 2004, a stress echocardiogram in November 2002, and a plain echocardiogram in January, 2005 failed to show "any evidence of ongoing severe cardiac disease." (Tr. 1439). Mr. Simpson had another component of cardiovascular disease in his hypertension, which was generally under control with minimal medication. (Id.). The ME went on to note that Mr. Simpson had musculoskeletal complaints regarding his back and shoulders, and examinations had recorded lumbosacral tenderness, but x-rays in June 2006 of his spine, pelvis, and hips were normal, and the consultative examiner Dr. Burchett had found a good range of motion. (Tr. 1440). The only indication of mental health treatment was a November 2004 visit to a mental health facility, where Mr. Simpson was described as having a mood disorder, dysthymia, and fears of death.(Tr. 1440-1). Although he was given an antidepressant, the ME saw no evidence the medication had been continued.

      Dr. Bryan testified in detail that he did not find the restrictions given by the treating physicians to be consistent with their office notes. He stated that in "note after note" Dr. Qazi mentioned that the plaintiff was doing well, had few complaints, and there was nothing in the clinical notes reflecting the degree of impairment the position asserted. (Tr. 1447). He saw no need from the record for the plaintiff to elevate his legs. (Tr. 1446). A March 2007 note from Dr. Echeverria stated that the plaintiff was doing fine and was able to walk two miles. (Tr. 1441). Dr. Bryan

09-187  Danny Ray Simpson

opined that Dr. Echeverria's form had been filled out by an assistant, because the word stent was misspelled as "stint."[2] He felt that fears of heat stroke if the plaintiff were exposed to high temperatures and pneumonia if he were exposed to cold were "a little ludicrous."  (Tr. 1444-5).

In addition to Dr. Bryan's testimony, the ALJ considered Dr. Burchett's consultative physical examination from September, 2007.  Dr. Burchett had some records available for review, although none were newer than 2003.  (Tr. 1271). Other than elevated blood pressure, most of the examination was normal.  There was diminished sensation in the left leg, although reflexes were normal, and the plaintiff could only squat to ninety degrees because of complaints of knee pain.  (Tr. 1272-3).  Dr. Burchett diagnosed coronary artery disease status post angioplasty and a history "fairly consistent" with ongoing angina.  (Tr. 1274).  He could not explain the loss of sensation in the left leg or confirm neuropathy.  No functional restrictions were suggested.

The ALJ noted that recent office notes from Dr. Echeverria indicated that Mr. Simpson was doing fine and physical examinations were normal for the most part, apart from a recent finding of tenderness and muscle spasm without any motor,

---

[2] The plaintiff suggests on appeal that the ME placed undue emphasis on this relatively minor mistake.  The court tends to agree, but the remainder of the testimony provides more than adequate grounds for the ME to discount Dr. Echeverria's conclusions.

09-187  Danny Ray Simpson

strength, reflex, or sensory deficits. (Tr. 1071). After telling Dr. Qazi in March 2007 that he felt wonderful and was walking 2 miles a day in good weather, there was an almost 18-month gap in treatment. However, in August 2008, Mr. Simpson described a very occasional chest tightness when walking. There were no significant clinical findings other than high blood pressure, and further testing was scheduled. No results were submitted. (Tr. 1072).

The ALJ found Dr. Bryan's testimony to be "very thorough and persuasive," but gave the plaintiff the benefit of the doubt in some areas and imposed a greater degree of restriction consistent with the prior final decision. (Tr. 1075). He gave the treating physician opinions no weight because of Dr. Bryan's opinion.

On appeal, the plaintiff once again challenges the rejection of the treating physician reports. Although the opinion of a treating physician is entitled to great weight, it is not given controlling weight unless it is supported by sufficient objective evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); 20 C.F.R. § 1527(d)(2). Moreover, the Sixth Circuit has recognized that testimony of a ME can provide substantial evidence to support an administrative decision. Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989). As noted by both the ME and the ALJ, the restrictions listed by the treating sources in the present case are remarkable for their lack of corroboration in the office notes and test results. Among the recent normal studies were a Persantine thallium

09-187  Danny Ray Simpson

stress test in October 2005 (Tr. 949, 954) and a gated Cardiolite stress study in March 2007 (Tr. 1250).  Almost all of Dr. Echeverria's 2006 and 2007 office notes report that the plaintiff described himself as "doing fine" and denying chest pain. (E.g., Tr. 1316, 1321, 1332, 1338, 1371).  To Dr. Qazi he reported feeling "great" in March 2007.

The combination of a lack of objective findings, the plaintiff's apparent statements to his physicians, the lack of corroborating evidence from other sources, and the testimony of the ME provide ample grounds for the ALJ to refuse to credit the treating physician opinions.  The court concludes that the current administrative decision is supported by substantial evidence.

The decision will be affirmed.

This the 26th day of February, 2010.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge